7831

Electrical Supply Company-

-vs-

Board of Commissioners-Port of
New Orleans.

No. 7831.

Court of Appeal

Parish of Orleans.

----------------

------

-------

By Dinkelspiel, J.

------

This suit is based upon a cliam of the Electrical Supply Company against the Board of Commissioners of the Port of New Orleans, commonly styled the Dock Board, amounting to $1.935.00., of which $1.750.00. is alleged to be the agreed price of a Direct Connected Second Hand Generator and Engine, and the balance $185.00. representing money which the plaintiff claims to have paid out to repair certain damage said to have been caused to the machinary by defendant.

Defendant claims that the sale was made subject to the guarantee and to a successful ten hour test of the generator to be conducted after same had been installed on the dredge Dickey.

Defendant claimed that the test proved to be unsatisfactory and alleged specially oweing to it's imperfect construction that same did not work properly, hence it was not indebted to plaintiff for the sum claimed for the purchase price paid xxx nor was it indebted to plaintiff for the amount claimed for repairs anasmuch as the damage necessitating said repairs was not caused by any fault which could be attributed to it.

From a judgment by the District Court in favor of plaintiff for the full amount of it's claim defendant has appealed to this Court.

From an examination of the correspondence which passed between plaintiff and defendant, which letters form part of this record, defendant accepted a bid from plaintiff to furnish it with a Direct Lundel 9 - 9- K- W- Generator for the sum of $1.750.00., delivery to be immeadiate, said purchase being condition upon plaintiff furnishing usual guarantees, and after a ten hour test of the generator and same installed on the Dredge Dixey.

514

Within a week after the receipt of the above letter plaintiff replied thereto acknowledging there bid of $1.750.00. had been accepted by defendant for this particular generator, and they guaranteed the outfit to with stand a ten hour test of the generator at it's full rate of capacity. In this leter they stipulated that the test be made immeadiately upon receipt of the outfit on the Dredge Dixey.

On March 4th. 12 of the same year, plaintiff by letter, notified defendant that it was then ready to run the test of the generator on the Dredge Dixey, asked to be advised when defendant would possibly be ready to receive same and to supervise it.

To this communication plaintiff received a reply dated March 7th., in which it was informed that defendant was not ready for the test,but would have same made in a few days there after.

Further correspondence shows that a test had been made on March 13th., which plaintiff claims to have been successful. But,on March 20th., plaintiff was notified that while a test of the generator had proved satisfactory, that oweing to the leakage of oil from the engine, same heated badly and therefore was not satisfactory, consequently the outfit had been rejected and plaintiff notified to remove same.

In the letter just referred to to mention was made, that one of the pitman rods had been bent, while the preliminary test was being made, responsibility for which damage was disclaimed by defendant.

The entire correspondence from defendant to plaintiff was signed by A. C. Bell, Assistant Engineer, while the evidence shows that the negotiations for the purchase of this outfit was conducted by Mr. Bell, as was the inspection of same, at which inspection he was assis-
-ted by Mr. Klein, cne of defendant(s superintendants

and which inspection was made prior to the writing of the letter accepting plaintiffs bid for the supply of this particular generator and engine.

An examination of the testimony in this record also proves, that the engine complained of was not only second hand but of a type known as oscillating engines, a type of engine very much out ofd date and very little used at the time of this transaction, and these facts, however, were known to defendant, who had same inspected by two of its officers previous to their acceptance of the bid for the supply of this outfit, and of which this very engine formed a part.

The uncontradicted evidence of Mess. Ellgutter and Hart is to the effect that an engine of this type leaked or dropped nil lubricating oil and this evidence is confirmed by the testimony of Mr. Tierney, who also testified that said engine carried an oil guage, which if properly handled will result in keeping the bearings properly lubricated and a release of any excess water, therby minimizing the faults which defendant complained of and the existance of which is given as a basis for the refusal of defendant to complete the purchase of this outfit.

Counsel for defenadant basis the right of defendant to complete the purchase of this plant under provision of Article 2460 R. C. C. which provides; " Suspended when buyer has right of inspection or trial. Things of which the buyer reserves to himself the view and trial, although the price be agreed on, are not sold, until the buyer be satisfied with the trial, which a kind of suspensive condition of the sale."

A careful examination of this record, however, does not satisfy us that this contract comes under the provision of this article, for the record clearly shows, that the engine, as far as the engine complained of

is concerned, same had been seen, inspected and examined by the Assistant Engineer of defendant and also a Superinten -dant of defendant prior to their letter to plaintiff, wherein plaintiff's bid for this particular outfit had been accepted? The only reservation made in that letter was that, " the usual guarantee furnished and a ten hour test of the generator be allowed". Whilst it is true there is no explanation in the record as to the technical meaning of the term, "usual guarantee", as used in the letter of acceptance above referred to, our opinion is that these terms mean no more nor less than that where an engine has been examined and inspected by the prospective buyer, that same is warranted to be the character of similar engines of the type, which in this case was of the oscillating type and character, and that same would do the work in the same manner and to the same extent as engines of this type are called upon to perform.

The evidence convinces us that this class of engine throws out or leaks oil, but with proper attention this leakage could be minimized, still as before as stated the engine was second hand to the knowledge of the Asistant Engineer of defendant, and which had been examined and tested under his supervision by one of def- -endant's employees selected for that purpose, and if it's type and peculiarities ought to have been known to both of these gentlemen.

It is true that there was an attempt on behalf of defendant, to show that Mr. Bell was not a mechanical engineer, but the testimony of Mr. O'Reilley, who was then chief engineer of defendant , is to the effect that Mr. Bell was selected by him to make the purchase of the engine and generator and to make the necessary contracts in connection therewith. Nor is there any evidence that Mr. Klein was not a capable engineer who knew the type of engine which was used.

In so far as the ten hour test of the generator itself is concerned, it is admitted that that test was carried out and same had proved satisfactory.

We are therefore of the opinion that plaintiff has complied with it's contract in every way in so far as the sale of this outfit is concerned, and we agree in the opinion of His Honor, the Judge a quo, who saw the witnesses, heard their testimony , and we believe there -for that they are entitled to payment for the amount claimed.

We are also of the opinion, that the damage occas- -ioned by the piston rod, which caused the machinery to get out of order, was due entirely to the fault of def- endant through subjecting same to a greater and higher steam pressure than the engine could bear, and therefore they defendant should be held liable and compelled to pay for having said engine put in order.

For the reasons herein assigned, it is ordered, adjudged and decreed that the judgment appealed from be, and the same is hereby affirmed. Defendant and appellant to pay costs of both Courts.

(Judgment Affirmed)